Filed 11/23/16

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E063996 |
| v. | (Super.Ct.No. FVA1400075) |
| EARL LEWIS HOUSER, JR., | OPINION |
| Defendant and Appellant. | |


APPEAL from the Superior Court of San Bernardino County. Gerard S. Brown, Judge. Reversed.

Edward J. Haggerty, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Michael Pulos, Deputy Attorneys General, for Plaintiff and Respondent.

During a trial on multiple counts of sexual offenses against a child, defense counsel informed the court that he had a doubt as to defendant and appellant Earl Lewis Houser, Jr.'s mental competence to stand trial. The trial court appointed a psychologist to assess defendant's mental competence within the meaning of Penal Code section 1367, subdivision (a),[1] and to advise the court whether there was substantial evidence that defendant was not competent to stand trial. Following a hearing at which the psychologist testified and was cross-examined by both the prosecution and the defense, the trial court concluded that defendant was mentally competent to stand trial. The trial resumed and defendant was convicted on all counts.

Although defendant's briefing addresses the question whether the court's ruling that defendant was mentally competent was supported by substantial evidence, we conclude, based on California Supreme Court opinions beginning with *People v. Pennington* (1967) 66 Cal.2d 508 (*Pennington*), that the issue before the trial court at that juncture was whether the expert's testimony was sufficient to raise a reasonable doubt as to defendant's competence and thus triggered his constitutional right to a full competency hearing, not whether defendant was or was not mentally competent. We also conclude that the evidence was sufficient to raise such a doubt. Because a trial court has "no power to proceed with the trial once a doubt arises as to the sanity of the defendant," the

---

[1] All further statutory citations refer to the Penal Code.

error is prejudicial per se and reversal is required.[2] (*Pennington*, at p. 521; see § 1368.) Accordingly, we will reverse defendant's conviction.

## PROCEDURAL HISTORY

A jury convicted defendant of six acts of lewd acts with a child under the age of 14 years (§ 288, subd. (a); counts 1, 2, 3, 5, 6, 7) and one count of oral copulation with a child under the age of 10 years (§ 288.7, subd. (b); count 4). On count 4, the jury was given the option of finding defendant guilty either of orally copulating the victim or having the victim orally copulate him. The jury found him guilty of having the victim orally copulate him and not guilty on the alternate theory.

The court sentenced defendant to a determinate term of 16 years in state prison for the violations of section 288, subdivision (a), followed by an indeterminate term of 15 years to life in state prison on count 4.

Defendant filed a timely notice of appeal.

## FACTUAL HISTORY[3]

The crimes were alleged to have taken place between 2007 and 2010. Defendant was the boyfriend of the victim's mother, and during the relevant period, he lived with the victim, her mother and her two brothers. The victim was between the ages of seven and 10 years at the time. During that time, defendant often cared for the victim while her

---

[2] Although the title of section 1368 refers to "sanity," the statute itself refers to "mental competence."

[3] Because the sole issue we address in this appeal does not require any analysis of the evidence, a brief statement of the underlying facts suffices.

mother was at work and her brothers were out of the house. He took advantage of their absences to molest the victim.

The victim did not disclose the abuse to her mother until she was 13 years old. By then, defendant no longer lived with them. The mother reported the abuse to the police. A detective assisted the mother in planning and executing a pretext call to defendant, which was recorded. During the lengthy conversation, defendant first denied having molested the victim but ultimately admitted having committed the acts she had described.

<u>LEGAL ANALYSIS</u>

*The Competency Statutory Scheme, Due Process, and the Standard of Review*

Both the due process clause of the Fourteenth Amendment to the United States Constitution and state law prohibit the state from trying or convicting a person who is mentally incompetent. (*People v. Sattiewhite* (2014) 59 Cal.4th 446, 464 (*Sattiewhite*).) A person is incompetent to stand trial "if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." (§ 1367, subd. (a).) Defendant contends that the trial court's ruling that he was mentally competent to stand trial violated his constitutional right to due process because it was not supported by substantial evidence. As noted above, however, procedurally, the issue before the trial court was not whether defendant was competent to stand trial but whether there was substantial evidence that defendant *might* be mentally incompetent and was therefore entitled to a full competency hearing.

4

Section 1368 provides that a competency hearing is required when the trial court declares a doubt as to the defendant's competence to stand trial.  (§ 1368, subd. (a).)[4] Despite the wording of section 1368, however, the California Supreme Court has declared that a competency hearing is also required if defense counsel informs the court that he or she has a doubt as to the defendant's competency and produces substantial evidence that the defendant is not competent:  "[O]nce the accused has come forward with *substantial evidence* of incompetence to stand trial, due process *requires* that a full competence hearing be held as a matter of right."  (*People v. Welch* (1999) 20 Cal.4th 701, 738 (*Welch*), citing *Pate v. Robinson* (1966) 383 U.S. 375, 384-386 and *Pennington*,

---

[4] Section 1368 provides:  "(a) If, during the pendency of an action and prior to judgment, or during revocation proceedings for a violation of probation, mandatory supervision, postrelease community supervision, or parole, a doubt arises in the mind of the judge as to the mental competence of the defendant, he or she shall state that doubt in the record and inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent.  If the defendant is not represented by counsel, the court shall appoint counsel.  At the request of the defendant or his or her counsel or upon its own motion, the court shall recess the proceedings for as long as may be reasonably necessary to permit counsel to confer with the defendant and to form an opinion as to the mental competence of the defendant at that point in time.

"(b) If counsel informs the court that he or she believes the defendant is or may be mentally incompetent, the court shall order that the question of the defendant's mental competence is to be determined in a hearing which is held pursuant to Sections 1368.1 and 1369.  If counsel informs the court that he or she believes the defendant is mentally competent, the court may nevertheless order a hearing.  Any hearing shall be held in the superior court.

"Except as provided in Section 1368.1, when an order for a hearing into the present mental competence of the defendant has been issued, all proceedings in the criminal prosecution shall be suspended until the question of the present mental competence of the defendant has been determined.

"If a jury has been impaneled and sworn to try the defendant, the jury shall be discharged only if it appears to the court that undue hardship to the jurors would result if the jury is retained on call.

"If the defendant is declared mentally incompetent, the jury shall be discharged."

*supra*, 66 Cal.3d at pp. 516-519; accord, *Sattiewhite*, *supra*, 59 Cal.4th at p. 465.)  If defense counsel states a doubt but does not produce sufficient evidence to persuade the trial court that the defendant might not be mentally competent, the trial court need not hold a competency hearing but it may, in its discretion, appoint a mental health professional to assess the defendant and report to the court.  If at that point there is substantial evidence that the defendant is not competent to stand trial, the trial court must suspend the criminal proceedings and hold a full competency hearing.  The trial court has no discretion to do otherwise.  (*Welch*, at p. 738.)  In this context, "substantial evidence" has been defined as evidence that is sufficient to raise a reasonable doubt concerning the defendant's competence to stand trial.  (*Ibid*.)  Accordingly, the court's duty to hold a competency hearing arises even if the evidence is in conflict (*ibid*.) and even if the trial judge does not personally entertain a doubt as to whether the defendant is competent. (*Pennington*, *supra*, 66 Cal.2d at p. 518 [where "doubt as to sanity may be said to appear as a matter of law," trial court has no discretion to deny a competency hearing].)  Denial of a competency hearing when one is warranted by the evidence is a violation of due process and is reversible error per se.  (*Id.* at p. 521.)

At oral argument, the Attorney General argued that *Pennington*, *supra*, 66 Cal.2d 508, is no longer the law and that current Supreme Court precedent holds that we must review deferentially a trial court's decision not to hold a competency hearing.  This is incorrect.

Counsel relied upon *People v. Rogers* (2006) 39 Cal.4th 826 (*Rogers*).  There, the court stated, "Both federal due process and state law require a trial judge to suspend trial

6

proceedings and conduct a competency hearing whenever the court is presented with substantial evidence of incompetence, that is, evidence that raises a reasonable or bona fide doubt concerning the defendant's competence to stand trial. . . . [Citing, inter alia, *Pennington*, *supra*, 66 Cal.2d at pp. 516-517.] [¶] *A trial court's decision whether or not to hold a competence hearing is entitled to deference, because the court has the opportunity to observe the defendant during trial.* [Citations.] The failure to declare a doubt and conduct a hearing when there is substantial evidence of incompetence, however, requires reversal of the judgment of conviction. [Citations.]" (*Id.* at p. 847, italics added.)

Although the italicized portion of the foregoing statement appears to support the Attorney General's position, the court's discussion of the competency hearing scheme actually makes it clear that it is consistent with the holding of *Pennington*, *supra*, 66 Cal.2d 508. In support of the statement that the trial court's observations are entitled to deference, *Rogers* cites *People v. Danielson* (1992) 3 Cal.4th 691, at page 727. (*Rogers*, *supra*, 39 Cal.4th at p. 847.) *Danielson* in turn cites *People v. Merkouris* (1959) 52 Cal.2d 672, at page 679, for the proposition that a trial judge's ruling regarding whether a competency hearing is required should always be given great deference. (*Danielson*, at p. 727.) In *Pennington*, the court discussed *Merkouris* at length and ultimately *rejected Merkouris*'s holding that where the evidence on the subject of the defendant's sanity or competence was "'highly conflicting,'" that evidence, "'together with the trial judge's personal observation of defendant,'" was sufficient to support the trial judge's conclusion that he did not have a doubt as to the defendant's sanity or competence. (*Pennington*, at

7

p. 516, quoting *Merkouris* at p. 681.)  In *Pennington*, the court concluded, based on *Pate v. Robinson*, *supra*, 383 U.S. 375, that due process mandates a hearing on competency whenever there is substantial evidence that the defendant might not be mentally competent.  Ordering a competency hearing is within the trial court's discretion *only* when the evidence casting doubt on the defendant's competence or sanity is *not* substantial.  (*Pennington*, at pp. 516-519.)  When there is substantial evidence as a matter of law, the trial court has no discretion.  (*Id.* at pp. 516-518.)  This distinction is reiterated in *Welch*, *supra*, 20 Cal.4th at page 738, as well as in *People v. Mai* (2013) 57 Cal.4th 986, at page 1033, and in *Sattiewhite*, *supra*, 59 Cal.4th at page 465.

Nor does *Drope v. Missouri* (1975) 420 U.S. 162, also cited in *Rogers*, *supra*, 39 Cal.4th at page 847, support the Attorney General's contention that the trial judge's observation of the defendant is entitled to deference despite objective evidence that suggests mental incompetence.  In fact, just like *Pennington*, *supra*, 66 Cal.2d 508, *Drope* rejected the contention that the trial court's determination as to inferences to be drawn from undisputed evidence is entitled to deference.  On the contrary, the court held, it is incumbent on a reviewing court "'to analyze the facts in order that the appropriate enforcement of the federal [constitutional] right may be assured.' [Citation.]" (*Drope* at p. 175; see also *id*. at pp. 174-182.)

In *Rogers*, *supra*, 39 Cal.4th 826, the court analyzed the evidence the defendant asserted as the basis for his claim that the trial court was required to hold a competency hearing and concluded that it was not substantial.  The court then noted that the trial court had the opportunity to observe the defendant's testimony and demeanor during the trial.

8

The court noted that the defendant's intelligence was above average, that he testified coherently and articulately, and that there was nothing in the defendant's testimony that would have caused the trial court to question whether the defendant was able to understand the proceedings or cooperate with counsel. The court held that, considering all of the evidence before the trial court, "there was no substantial indication of incompetence requiring the trial court to declare a doubt and conduct a competence hearing." (*Rogers* at p. 849.) Accordingly, the holding in *Rogers* is fully consistent with *Pennington*, *supra*, 66 Cal.2d at pages 516 through 519. More importantly, it most definitely does not overrule *Pennington*.

Nor does *People v. Townsel* (2016) 63 Cal.4th 25, also cited by the Attorney General, support her position. *Townsel* does not explicitly hold that the trial court's ruling was subject to deferential review. It does, however, hold that the evidence the defendant relied upon to assert that the trial court was obligated to appoint the director of a regional center to assess whether his developmental disability rendered him not competent to stand trial did not amount to substantial evidence that he was not mentally competent. (*Id.* at pp. 36-42.) Accordingly, that case, too, does not indicate that the court has departed from the rules it enunciated in *Pennington*, *supra*, 66 Cal.2d 508.

*Application to the Instant Case*

In this case, the issue arose as follows: On the morning of the third day of testimony, the bailiff informed the court that defendant had indicated that he did not want to come into the courtroom. The bailiff did not disclose whether defendant gave any reason. Defense counsel waived defendant's presence for that day's proceedings. That

9

afternoon, counsel informed the court that he had a doubt as to defendant's competency to stand trial. He stated that during the previous day's proceedings, defendant "was having a hard time keeping it together, and I had to constantly pat him on the back and say, are you okay, hang in there." The court responded that defendant's emotional response to listening to the evidence, which included the victim's testimony and the recorded pretext call with the victim's mother, was understandable. For that reason, the court was not "comfortable" suspending the proceedings "unless somebody that knows a lot more about psychology and psychiatry than any of us do has an opportunity to go ahead and meet with the defendant." The court said that after the afternoon's planned testimony, which it expected to be brief, it would have defendant brought up from the holding cell and allow defense counsel, his supervisor "and anybody else he chooses" to confer with defendant "so they can be [in] a better position to indicate to the court" whether they believed that defendant was not mentally competent. If defense counsel reported that he believed defendant was not competent, the court would arrange for a psychiatrist or psychologist to interview defendant and to be prepared to testify on the following Monday morning as to defendant's competency.[5] Defense counsel objected to the court not suspending the proceedings, but the court repeated that it did not consider suspension of the proceedings and initiation of a full competency hearing appropriate "given my concerns and my reservations about [defendant's] conduct and the timing of

---

[5] These events took place on Wednesday, April 22, 2015. The court had already decided that because a juror had a medical appointment for his or her child on Thursday and the court is always dark on Fridays, trial proceedings would be recessed until Monday.

that conduct," i.e., that the court did not, at that point, entertain a doubt as to defendant's competence.

Later that day, defense counsel reported that he and his supervisor had spoken to defendant. Defendant told them he was hearing voices that interfered with his train of thought, in spite of the antipsychotic medication he was taking. Because of the voices, counsel said, defendant was not able to assist in his defense. The court again expressed a doubt as to whether there was substantial evidence that defendant was mentally incompetent. It stated that it would proceed as planned, by appointing a psychiatrist or psychologist to interview defendant and testify the following Monday. It would put the doctor on the witness stand and allow both parties to ask any questions they wished. The court said that it was not required to do so, but felt that "in this situation it wouldn't be a bad idea."

The court appointed Dr. Chuck Leeb, a psychologist, to assess defendant's mental competence. Dr. Leeb submitted a written report and then testified.[6] We will describe Dr. Leeb's testimony in detail below, but for purposes of setting forth the history of the proceedings, it suffices to say that Dr. Leeb testified that defendant was schizophrenic and hearing voices, and that he had an irrational but genuine fear of the prosecutor, sufficient to cause a "flat out panic response" at the thought of being in the prosecutor's

---

[6] The report is sealed, and we do not quote from it. Dr. Leeb's testimony was not sealed.

presence. Based on his understanding of the legal requirements for competency to stand trial, however, he concluded that defendant was competent.

Based on Dr. Leeb's testimony and on its own observations of defendant during the trial, the court ruled that defendant was competent to stand trial.[7] Dr. Leeb's testimony, however, constituted substantial evidence sufficient to raise a doubt as to defendant's competence. Accordingly, the court's ruling was error.

Dr. Leeb's conclusion that defendant was competent was based on his understanding that under the law, a defendant is competent if he or she is capable of understanding the proceedings and assisting defense counsel. However, in *Stankewitz*, *supra*, 32 Cal.3d 80, the court recognized the concept of "limited incompetence," i.e., that a defendant who has the cognitive ability to understand the proceedings and could otherwise rationally assist in his or her defense is nevertheless legally incompetent if a paranoid delusion prevents him or her from doing so. In that case, the defendant suffered from a paranoid delusion focused on his public defender and the public defender's office in general. Among other things, defendant believed that his public defender was in collusion with the prosecutor. (*Id.* at p. 88.) After a "fundamental dispute" as to what defense should be presented came to a head, defense counsel informed the court that he

---

**7** The Attorney General asserts that the trial court found that there was insufficient evidence to raise a doubt as to defendant's competence to stand trial. We disagree that this is what the trial court found, and, as we discuss below, we conclude that there was sufficient evidence to raise a doubt, based on the concept of "limited incompetence" enunciated in *People v. Stankewitz* (1982) 32 Cal.3d 80 (*Stankewitz*). The Attorney General limits her discussion of the evidence to the trial court's observations and Dr. Leeb's testimony that defendant had the cognitive ability to assist in his defense.

12

believed that the defendant's position was irrational and was the product of a mental condition. The court appointed a psychiatrist to examine the defendant concerning his competency to stand trial. The doctor testified that the defendant's paranoid delusion prevented the defendant from assisting in his defense in a rational manner. (*Ibid*.) He also gave the opinion that the defendant might be able to rationally assist a private attorney if one were appointed for him. (*Id.* at p. 92.) The trial court acknowledged that the defendant could not cooperate with a public defender in a rational manner, but "chose to cast the issue in terms of whether there should be a substitution of counsel." (*Ibid*.) Nevertheless, the trial court denied the substitution, and defendant proceeded to trial "with a counsel [he] was unable to rationally assist." (*Ibid*.)

The California Supreme Court held that because there was substantial evidence indicating that defendant could not rationally assist his attorney because of his paranoid delusion, the question of the defendant's competence "should have been determined in a full competency hearing conducted as required by sections 1367 and 1368." (*Stankewitz*, *supra*, 32 Cal.3d at p. 93.) The court held that the existence of potentially conflicting evidence did not relieve the trial court of the duty to conduct a competency hearing and that reversal of defendant's conviction was mandatory. (*Id*. at pp. 91-94.)

Similarly, Dr. Leeb's testimony constituted substantial evidence that defendant could not rationally assist his attorney because of his paranoid delusion concerning the prosecutor. Dr. Leeb stated initially that his basic conclusion was that defendant was competent to stand trial, but that "the conclusions are really much more complicated than it seems" and that "there are a number of issues involved" with that conclusion. He

13

testified that defendant understood the proceedings and was willing to assist his attorney. However, defendant was schizophrenic and was having paranoid delusions and persecutory delusions. Defendant's refusal to enter the courtroom resulted from his fear of the prosecutor. He reacted viscerally to her, seeing her as a monster. Dr. Leeb testified that this fear was the result of defendant's "very dysfunctional personality structure," consistent with empathic deprivation during childhood, meaning that the parent or primary caregiver wasn't able to instill in him the ability to regulate anxiety. In some people, if the primary caregiver is perceived by the infant as "being scary," this can result in what Dr. Leeb described as "the traumatic image." Unless it is dealt with through intensive therapy, this "implicit memory of a scary face holds forever," and when that image comes up, the person can go into the "flight and fight [*sic*] response" or can go into a panic mode.

Defendant explained to Dr. Leeb that when he looked at the prosecutor, he saw "this evil darkness, like an attacking vampire. I get so scared I can't sit at the table. I'm jerking all around. I wanted to dive under the table. I won't go into the courtroom." Dr. Leeb continued, "When [defendant] stated, 'I see this evil darkness,' he shrank down into his chair, his eyes went wide, and you can [*sic*] see the fear response on his face, and his voice got high and he says [*sic*], 'I'm not going to go in there,' and he went like this with his arms (indicating), in what appeared to be a protective gesture." Dr. Leeb then demonstrated the "attacking vampire," as defendant had described how he saw the prosecutor. After calming him down and asking some innocuous questions, Dr. Leeb suddenly mimicked the face defendant had made. Based on defendant's instantaneous

14

reaction, Dr. Leeb believed that defendant's fear was real, that his response was to "an image that [went] back to [defendant's] infancy," and that he was not malingering. Dr. Leeb said it would be "very difficult to get him into court because of—it's a flat out panic response."

Dr. Leeb went on to testify that although defendant's refusal to enter the courtroom was the product of his mental illness, it was nevertheless "on some level" a matter of choice. However, when asked by defense counsel whether he had focused on defendant's ability to cooperate with counsel—and counsel specifically stated that he wanted defendant to be present in the courtroom—in deciding whether defendant was competent, Dr. Leeb replied, "I asked him do you feel that you can go into the courtroom because your attorney wants you to go there and he said I don't think so. And I said, why not? And he said, that really scares me. I have difficulty seeing fear and competency. I don't know what's required legally, making an assumption you folks know your job real well. So I don't know what it means if somebody says I can't—I'm choosing not to show up." He also testified, "I'm not a physician, but if a physician asked [*sic*] could he be given medications to control his level of anxiety, I would not be surprised that the response would be yes. *His level of anxiety could* [*interfere*] *with his, I guess, ability to cooperate . . . .*" (Italics added.)

Even though Dr. Leeb believed that defendant was making a choice, his testimony strongly suggests otherwise, i.e., that defendant's "flat out panic response" was sufficiently severe to prevent him from exercising his ability to choose to enter the courtroom and that anti-anxiety medication might be necessary to enable him to make

15

that choice. Taken all together, this evidence is clearly sufficient to raise a doubt as to whether defendant was able, as a result of his mental condition, to rationally assist in his defense. Accordingly, the court erred in not ordering a full competency hearing.[8] (*Stankewitz*, *supra*, 32 Cal.3d at pp. 93-94.)

Although it could be argued that defendant was effectively given a full hearing on the question of competency, in which his attorney was allowed to cross-examine Dr. Leeb and to argue on defendant's behalf, and that reversal and remand for further proceedings is therefore not necessary in order to protect defendant's due process rights, we note that the California Supreme Court rejected this argument in *Pennington*, *supra*, 66 Cal.2d 508. In that case, the court addressed the argument "that the proceedings conducted by the judge when he took evidence to aid him in deciding if a doubt of defendant's [competence] existed constitute the 'hearing' on the issue of competence to stand trial which *Pate v. Robinson*[, *supra*, 383 U.S. at p. 385] requires." (*Pennington*, at p. 520.) The court stated, "We disagree. In [*Pate v.*] *Robinson*, where the United States Supreme Court found a violation of due process of law in failure to conduct a hearing on present sanity, the Illinois trial judge had also taken certain evidence the only purpose of which could have been to guide him in determining if a doubt of Robinson's competence to stand trial existed. [Fn. omitted.] The distinction between a complete hearing to

---

[8] We emphasize that the evidence is sufficient only to show that defendant *might* not be able to assist his attorney because of his mental condition. Not all paranoid delusions render a defendant incompetent (see, e.g., *People v. Halvorsen* (2007) 42 Cal.4th 379, 401-403), and it is arguable that defendant's inability to be in the courtroom did not render him unable to assist in his defense in a meaningful way. Those are issues that should have been explored in a competency hearing.

16

decide if an accused is competent to stand trial and special proceedings conducted by a judge to determine whether he should declare that a doubt of the accused's present sanity exists is well recognized in this state. [Citations.] The decision of the United States Supreme Court in *Pate v. Robinson* demonstrates that the type of 'hearing' which due process requires when the accused has come forward with substantial evidence of present insanity has not been accorded the accused when the judge merely takes evidence to guide him in determining if he should declare the existence of a 'doubt.' A 'hearing' is generally understood to be a proceeding where evidence is taken to the end of determining an issue of fact and a decision made on the basis of that evidence. [Citation.] Such a full hearing on the present sanity issue, manifestly the type of hearing the United States Supreme Court was referring to, is provided for by section 1368 of the Penal Code and was erroneously denied to defendant Pennington in the instant case." (*Pennington*, at pp. 520-521.)

The hearing in this case also did not afford defendant due process, as discussed in *Pennington*, because the issue the court actually adjudicated was not the stated subject of the hearing, i.e., whether there was sufficient evidence to warrant a hearing on competence to stand trial. (*Pennington*, *supra*, 67 Cal.2d at pp. 520-521.) The issue of defendant's actual competence was not within the scope of the hearing. The hearing also failed to comply with the requirements of section 1369, which sets forth the procedure for

17

conducting competency hearings.[9]  Section 1369 provides that each side is entitled to

present rebuttal evidence.  (§ 1369, subd. (d).)  Defense counsel had no opportunity to do

_____

        [9]  In pertinent part, section 1369 provides:  "Except as stated in subdivision (g), a
trial by court or jury of the question of mental competence shall proceed in the following
order:  [¶]  (a)  The court shall appoint a psychiatrist or licensed psychologist, and any
other expert the court may deem appropriate, to examine the defendant.  In any case
where the defendant or the defendant's counsel informs the court that the defendant is not
seeking a finding of mental incompetence, the court shall appoint two psychiatrists,
licensed psychologists, or a combination thereof.  One of the psychiatrists or licensed
psychologists may be named by the defense and one may be named by the prosecution.
The examining psychiatrists or licensed psychologists shall evaluate the nature of the
defendant's mental disorder, if any, the defendant's ability or inability to understand the
nature of the criminal proceedings or assist counsel in the conduct of a defense in a
rational manner as a result of a mental disorder and, if within the scope of their licenses
and appropriate to their opinions, whether or not treatment with antipsychotic medication
is medically appropriate for the defendant and whether antipsychotic medication is likely
to restore the defendant to mental competence.  If an examining psychologist is of the
opinion that antipsychotic medication may be medically appropriate for the defendant
and that the defendant should be evaluated by a psychiatrist to determine if antipsychotic
medication is medically appropriate, the psychologist shall inform the court of this
opinion and his or her recommendation as to whether a psychiatrist should examine the
defendant.  The examining psychiatrists or licensed psychologists shall also address the
issues of whether the defendant has capacity to make decisions regarding antipsychotic
medication and whether the defendant is a danger to self or others.  If the defendant is
examined by a psychiatrist and the psychiatrist forms an opinion as to whether or not
treatment with antipsychotic medication is medically appropriate, the psychiatrist shall
inform the court of his or her opinions as to the likely or potential side effects of the
medication, the expected efficacy of the medication, possible alternative treatments, and
whether it is medically appropriate to administer antipsychotic medication in the county
jail. . . .  [¶]  . . .
        "(b) (1)  The counsel for the defendant shall offer evidence in support of the
allegation of mental incompetence.  [¶]  (2)  If the defense declines to offer any evidence
in support of the allegation of mental incompetence, the prosecution may do so.
        "(c)  The prosecution shall present its case regarding the issue of the defendant's
present mental competence.
        "(d)  Each party may offer rebutting testimony, unless the court, for good reason in
furtherance of justice, also permits other evidence in support of the original contention.
                                                              *[footnote continued on next page]*

18

so.  Nor was he given the opportunity to prepare either to cross-examine Dr. Leeb or to rebut Dr. Leeb's conclusion that defendant was competent to stand trial and was making a volitional choice not to participate.  Counsel were not given Dr. Leeb's report to review until Dr. Leeb had already taken the witness stand.  Furthermore, he had no opportunity to consult with a physician to determine whether treatment with anti-anxiety medication would have permitted defendant to overcome his fear, as Dr. Leeb suggested.  For all of these reasons, the hearing was not the equivalent of a full competency hearing, to which defendant was entitled.  Accordingly, reversal is required.  (*Pennington*, *supra*, 66 Cal.2d at p. 521.)

Because reversal is required on this ground, we need not address the remaining issues defendant raises.

DISPOSITION

The judgment is reversed.

CERTIFIED FOR PUBLICATION

McKINSTER
                                                                  J.

---

*[footnote continued from previous page]*
"(e)  When the evidence is concluded, unless the case is submitted without final argument, the prosecution shall make its final argument and the defense shall conclude with its final argument to the court or jury."

We concur:

RAMIREZ
       P. J.

SLOUGH
       J.